■ In the Matter of ARBOR HILL PARTNERS, Respondent, v

NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RE-
NEWAL et al., Appellants.—Harvey, J. Appeal from a judgment
of the Supreme Court (Cobb, J.), entered November 16, 1988 in
Albany County, which granted petitioner's application, in a
proceeding pursuant to CPLR article 78, to annul a determi-
nation of respondent New York State Division of Housing and
Community Renewal establishing rent increases to be charged
tenants at petitioner's residential project.

Petitioner, a limited-profit housing organization, is the bene-
ficial owner of a residential project located in the City of
Albany known as Ten Broeck Manor. The project consists of
189 apartments (850.5 rental rooms plus one superintendent's
apartment) and only persons with low income can reside in
them (see, Private Housing Finance Law § 31 [2]). The project
is subject to the supervision and control of respondent New
York State Division of Housing and Community Renewal
(hereinafter the Division), which establishes the rental rates
the project can charge tenants. Despite several rent increases
granted to petitioner by the Division since the project com-
menced occupation in 1975, Ten Broeck Manor has been
consistently unsuccessful financially. Its income has been
insufficient to cover project expenses, which include the debt
service of a $6,207,000 loan made at the time of construction
by the New York State Urban Development Corporation
(hereinafter UDC). Consequently, the mortgage fell into ar-
rears. Moreover, the project's equity investors have not yet
received any return on their investment despite the fact that
Private Housing Finance Law § 28 (1) authorizes up to a 6%
rate of return.

Accordingly, petitioner filed an application with the Divi-
sion in December 1987 seeking a further rent increase of
$10.94 per room per month, effective June 1, 1988, and an
additional $3.64 per room per month increase to be effective a
year later. While petitioner calculated that these increases
were still too small to eliminate its budget deficit and reduce
its mortgage arrearage, it wanted to "phase in" a rent in-
crease to its tenants rather than impose a large increase all at
once. Nevertheless, after a review of petitioner's costs and
budget, the Division only increased petitioner's rates by $3 per
room per month for 1988 and a like amount for 1989, even
though it found that rent increases totaling $21.81 per room
per month would be necessary for petitioner to simply break
even. The Division also ordered petitioner to put aside over
$9,000 per month into an operating escrow account to under-
write certain improvements, thereby causing actual net reduc-

tions in revenues, to be financed by "eliminating" petitioner's debt service obligation under the UDC mortgage. Following the issuance of this order, UDC commenced foreclosure proceedings against petitioner and petitioner commenced this CPLR article 78 proceeding to annul the Division's determination. Finding the determination to be arbitrary and capricious, Supreme Court granted petitioner's application and remitted the matter to the Division for a determination of an appropriate maximum rental. This appeal by the Division and its Commissioner followed.

Initially, we note that respondents do not have an appeal as of right (CPLR 5701 [b] [1]) in this case because Supreme Court's order is nonfinal in the sense that it did not simply remit the matter to respondents to perform a ministerial duty, but left the Division in a position of still being able to exercise a great deal of residual discretion in its determination (see, Matter of Tenants Comm. v Joy, 58 AD2d 797). Accordingly, respondents should have moved for leave to appeal (CPLR 5701 [c]). Nonetheless, in light of the fact that petitioner does not challenge respondents' failure to so move and the issue presented is a substantial one, we deem this case an appropriate one for us to grant permission to appeal sua sponte (see, Matter of Intemann v County of Hamilton, 132 AD2d 871).

Turning to the merits, we affirm. Supreme Court correctly found that the rent increase authorized by the Division lacked a rational basis and was violative of the Private Housing Finance Law. In contending otherwise, respondents point to the fact that Private Housing Finance Law article 2 was enacted primarily to provide low-income housing and that purpose would be defeated if the rental rates were increased beyond the level authorized by respondents. This, under respondents' analysis, is because tenants would move out of the project when they could not afford the higher rents. An increased vacancy rate would result in less income for petitioner.

While respondents correctly assert that the provision of low-income housing is of major importance, the Legislature did not intend for this goal to be achieved at any cost. Accordingly, it specifically set out the details of the financing of these projects (see, Private Housing Finance Law art 2). Significantly, the Division's projected vacancy rate can only be speculative and Supreme Court noted that the risk of increased vacancies could well be avoided by an aggressive marketing strategy.

Respondents' goal in protecting the tenants by granting a

minimal increase is laudable, but it was also unlawful in that it did not allow petitioner "to secure * * * sufficient income for it to meet within reasonable limits all necessary payments to be made * * * of all expenses including fixed charges, sinking funds, reserves and dividends on outstanding stock" (Private Housing Finance Law § 31 [1] [c]; *see also,* Private Housing Finance Law § 28 [1]). By this language it is apparent that the Legislature intended that housing companies, in the process of providing housing for low-income persons, should be able to charge rents that enable them to pay their expenses, including debt service, and to receive a return on their investment *(see, Matter of River Park Towers Tenants Assn. v Goldman,* 94 Misc 2d 856, *affd on opn below* 65 AD2d 734; *Hanks v Urstadt,* 74 Misc 2d 536, *affd* 37 AD2d 1044; *see also, Arbor Hill Partners v New York State Div. of Hous. & Community Renewal,* 120 Misc 2d 549). The Division's determination not only did not enable petitioner's investors to receive a return on their investment, it also left petitioner incapable of paying its mortgage, a result clearly not intended by the Legislature.

Finally, we note that respondents' reliance on administrative deference in this matter is misplaced since the subject issues involve matters of pure statutory analysis and an apprehension of legislative intent *(see, Matter of Graham v Armstrong Contr. & Supply Co.,* 126 AD2d 36; *Matter of Occidental Chem. Corp. v Public Serv. Commn.,* 114 AD2d 149, *lv denied* 68 NY2d 608).

Judgment affirmed, with costs. Kane, J. P., Mikoll, Yesawich, Jr., Mercure and Harvey, JJ., concur.