■ NEW YORK STATE MORTGAGE LOAN ENFORCEMENT AND ADMINISTRATION CORPORATION et al., Respondents, v ARBOR HILL HOUSES, INC., et al., Appellants, et al., Defendants.— Levine, J. Appeal from an order of the Supreme Court (Kahn, J.), entered September 4, 1990 in Albany County, which, *inter*

---

*alia,* granted plaintiffs' motion for summary judgment against certain defendants.

Plaintiff New York State Urban Development Corporation (hereinafter UDC) is a public benefit corporation established in 1968 to foster private investment, development and operation of low-income housing in impoverished areas of the State *(see,* L 1968, ch 174, §§ 2, 4, as amended). Typically, this objective is met by UDC's financing 95% of the housing project's costs through a nonrecourse mortgage loan with the private investors furnishing the balance as an equity contribution. As is more fully described in *New York State Mtge. Loan Enforcement & Admin. Corp. v Coney Is. Site Five Houses* (109 AD2d 311, 313-314, *appeal dismissed* 67 NY2d 1049), in addition to immunity from personal liability on the loan, private investors are given incentives to participate by way of substantial income tax benefits and the opportunity for a return on their equity of up to 6%. Originally, UDC was also given substantial supervisory and regulatory control over the housing projects it financed but, in 1975, because the agency was experiencing financial problems and unable to sell its bonds to fund loans, the Legislature transferred UDC's financing function to plaintiff New York State Project Finance Agency (hereinafter PFA), created plaintiff New York State Mortgage Loan Enforcement and Administration Corporation (hereinafter MLC) as a subsidiary of UDC to perform all mortgage enforcement and administration functions, and gave UDC's supervisory and regulatory functions, including regulation of rental rates, to the State Division of Housing and Community Renewal (hereinafter DHCR) *(see, New York State Mtge. Loan Enforcement & Admin. Corp. v Coney Is. Site Five Houses, supra,* at 319).

In 1975, a UDC-financed low-income apartment complex, known as Ten Broeck Manor, was constructed in the City of Albany at a cost of about $6.5 million, 95% of which was funded by the UDC loan secured by a nonrecourse mortgage. Defendants Arbor Hill Partners (a limited-profit housing company organized under Private Housing Finance Law article 2) and Arbor Hill Houses, Inc. (hereinafter collectively referred to as Arbor Hill) were, respectively, the beneficial owner and the legal owner of Ten Broeck Manor. The mortgage was subsequently assigned to PFA. Tenant maximum rental rates and fees at Ten Broeck Manor were statutorily subject to the regulatory control of DHCR *(see,* Private Housing Finance Law § 31 [1] [a]).

Almost from the inception of its operation, the Ten Broeck

Manor project had financial difficulties rendering it unable to make the regular payments of principal and interest under the UDC mortgage. Arbor Hill claimed that the project's dire financial straits were due to unreasonable restrictions on its rental charges imposed by DHCR. In 1983 and 1988, it successfully prosecuted two CPLR article 78 proceedings against DHCR (see, *Arbor Hill Partners v New York State Div. of Hous. & Community Renewal*, 120 Misc 2d 549; *Matter of Arbor Hill Partners v New York State Div. of Hous. & Community Renewal*, 156 AD2d 896, *lv denied* 75 NY2d 711), resulting in judgments annulling DHCR rental determinations and remitting to the agency to fix appropriate rental rates sufficient to permit the project to pay expenses including debt service and a return on the private investment portion of the cost of the project's construction.

Meanwhile, Arbor Hill's arrears on the UDC mortgage loan grew to some $1.3 million by 1987 and MLC had been authorized by UDC and PFA to commence foreclosure. Arbor Hill and MLC, however, then entered into an agreement, embodied in a 1987 letter of intent, for a restructuring of the loan under which there would be a deferment of payment of principal arrears and an additional equity contribution by the investors sufficient to fund a repair and capital improvement program as required by DHCR. When Arbor Hill failed to go through with a closing on the proposed loan restructuring agreement following the 1988 DHCR maximum rental determination later challenged in court, plaintiffs commenced the instant foreclosure action. Arbor Hill and certain other defendants (hereinafter collectively referred to as defendants) appeal from an order of Supreme Court granting plaintiffs' motion for summary judgment dismissing their affirmative defenses and granting a judgment of foreclosure.

We affirm. Arbor Hill has never denied that the mortgage was in default and, on appeal, only asserts that Supreme Court erred in dismissing its affirmative defenses of waiver, estoppel and bad faith. In essence, Arbor Hill claims that these defenses are viable because evidence was submitted that plaintiffs' actions, either alone or in concert with DHCR, prevented Arbor Hill from meeting the Ten Broeck Manor mortgage debt service obligations. Thus, according to defendants, equity should bar foreclosure.

Arbor Hill, however, has submitted no evidence whatsoever that would link its inability to meet the payment schedule under the mortgage to any external cause other than DHCR's allegedly unreasonable restrictions on rental rates at Ten

Broeck Manor. Moreover, Arbor Hill has failed to establish any factual basis upon which the actions of DHCR regarding rental determinations can be attributed to plaintiffs.

First, Arbor Hill is clearly wrong in its contention that the responsibilities of plaintiffs and DHCR are so intertwined statutorily that their actions must be deemed collective. As pointed out in *New York State Mtge. Loan Enforcement & Admin. Corp. v Coney Is. Site Five Houses* (109 AD2d 311, 319-320, *supra),* ascribing any statutory role to PFA and MLC in supervising and regulating rental rates at private housing projects such as Ten Broeck Manor would directly contradict the over-all scheme and purpose of the 1975 legislation dividing the financing and regulatory functions of UDC with respect to such projects.

Nor has Arbor Hill submitted any factual proof from which it can reasonably be inferred that plaintiffs and DHCR were somehow working cooperatively to set ruinously low maximum rentals at Ten Broeck Manor in order to create a basis for plaintiffs to foreclose the mortgage. Defendants rely principally on the insistence by MLC and PFA during the loan restructuring negotiations and in the letter of intent that Arbor Hill comply with the directives of DHCR regarding repairs, obtain various DHCR approvals and seek rental increases from DHCR sufficient to meet all of its current financial obligations and one year's debt service arrears. Requiring Arbor Hill in 1987 to seek maximum rental rate increases sufficient to stabilize its financial condition hardly supports any inference that MLC and PFA were engaged in a conspiracy with DHCR to prevent Arbor Hill from meeting its mortgage obligations. Likewise, insisting upon Arbor Hill's compliance with repair directives which DHCR concededly had statutory authority to issue and requiring Arbor Hill to obtain statutorily mandated DHCR approvals shows nothing more than a prudent attempt by the mortgagor to insure Arbor Hill's future ability to perform its obligations under the proposed loan structuring agreement. That MLC, PFA and DHCR staff communicated from time to time over the project's financial and physical condition is consistent with the "working relationship" between these agencies envisaged under the 1975 legislation, but such contact does not support attribution to plaintiffs of DHCR's actions in regulating rental rates *(see, New York State Mtge. Loan Enforcement & Admin. Corp. v Coney Is. Site Five Houses, supra,* at 320-321).

Finally, we find no merit in Arbor Hill's claim that, pursuant to Private Housing Finance Law § 94 (1), Supreme Court

should have granted the request of defendants for a hearing to determine whether plaintiffs' interests could have been secured or safeguarded by means other than a foreclosure sale (see, Private Housing Finance Law § 94 [2]; see also, City of New York v Becksmad Gardens, 113 Misc 2d 304).

Mikoll, J. P., Yesawich Jr., Crew III and Casey, JJ., concur. Ordered that the order is affirmed, with costs.